JAMES K. P. McClary v. The Michigan Central Railroad Company.

*Implied contract—Services rendered.*

Under the postal laws of the United States, each railroad company is bound to carry to and from the post-office all mails at terminal points of its road, while the government lets special contracts for such carriage to and from the stations along the line. At a city which was a terminus of two divisions of defendant's road, and also a station on its main line, plaintiff had a contract with the defendant for the carriage of the mail of one of its divisions, and a contract from the government for the carriage of the main-line mail. Supposing it to be his duty under his contract with the government to carry the mail of the other division, plaintiff continued to do so without charge,

until he learned of defendant's duty in the premises, when he declined further carriage of such mail. And it is held that, the defendant having permitted the performance of such services, and having had the benefit thereof, the law will presume that they were to be paid for, there being nothing in the relation of the parties that would repel the idea that payment was intended.

Error to Berrien. (O'Hara, J.) Argued June 22, 1894. Decided October 16, 1894.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Edwards & Stewart* (*Ashley Pond* and *Henry Russel,* of counsel), for appellant.

*George S. Clapp,* for plaintiff.

Long, J. Plaintiff sued to recover of defendant for services in carrying the Air Line mail, on its arrival at Niles over defendant's Air Line Division, from the depot of defendant to the post-office in the city. On the trial, plaintiff had verdict and judgment.

It is conceded that plaintiff had a contract with the government to carry the mails to and from the main line of defendant's road, and that under that contract he carried these mails from August, 1885, to the time of commencement of suit. It is also conceded that plaintiff carried between the defendant's depot and the post-office the mails that came and went over the South Bend Division of the defendant's road, and was paid therefor by defendant the sum of $5 per month. It is also conceded that plaintiff carried between the defendant's depot and the post-office all mails that came and went over the Air Line Division of defendant's road. Under the postal laws of the United States, each railroad company is bound to

carry to and from the post-office all mails at terminal points of its road, while the government lets special contracts for such carriage to and from the stations along the line. The plaintiff claims that, while he was carrying the mails from the main line, he was not aware that it was the duty of the defendant to carry the Air Line mail, but, supposing it his duty to carry it under his contract with the government, he continued to carry it without charge, until he ascertained that it was the defendant's duty to carry it, when he ceased to do so, and was subsequently paid by the defendant to carry it. There is but little dispute as to the facts.

The court was asked by defendant to charge the jury as follows:

"The fact that the plaintiff did not know that the defendant was obliged to deliver at the post-office in said city of Niles and carry all mail from the post-office in said city of Niles to its trains on the Air Line Division of its said road, and because of such lack of knowledge this plaintiff did carry the same between the trains and post-office, would not give the plaintiff a right of action against this defendant for such service.

"An action will not lie to recover payment for voluntary service, any more than to recover moneys voluntarily paid out for another's benefit.

"The proof in this case shows that no contract was ever made between the plaintiff and defendant to carry any mail at the city of Niles until December 29, 1891, and that the plaintiff, without consulting or advising with any authorized agent of the defendant, carried the said mail at the said city of Niles; and it was his duty to have advised some proper officer or agent of said defendant, in case the pay was not satisfactory to him, of such fact, and failing to do so, but receiving payment at $5 a month for carrying said mail, without reference to any particular mail, he is now prohibited from claiming any.

"The fact that the plaintiff in this case carried the mail to and from defendant's depot that came off of and went over its Air Line Division, under a mistaken idea,

or not knowing that the defendant was obliged to deliver it and take it from the post-office, would not of itself give the plaintiff the right to turn round and bring this action against the defendant.

"If the jury find that the plaintiff carried said mail from August 1, 1885, until January 1, 1892, or thereabouts, and had made no contract to carry the same, but did carry it without objection, and under the belief that it was part of his work in connection with the carrying of the other mail between the same points, for which he conceded he did get pay, and made no objection to it nor demand for payment all that time, he could not thereafter, upon learning that it was not part of his duty to carry said Air Line mail, turn round and recover, for receiving the same, from this defendant, and therefore your verdict should be for the defendant.

"The defendant pays its employés every month, and has pursued that system from August 1, 1885, until the commencement of this suit; and every employé, after receiving his pay, signs a receipt called the 'pay roll,' and such a receipt or pay roll this plaintiff signed, and drew his pay at $5 a month every month from said August 1 to January 1, 1892. Those pay rolls have been offered in evidence, and all read as follows: 'Sums due for all personal services during the month of September, 1885.' Up to September they are printed, and the month left blank, to be written in as occasion may require. At Niles station, upon every month's pay roll of defendant, as above described, during all of the period of time for which he brings suit and seeks to recover, appears the plaintiff's name receipting for all personal services and for carrying mail, without reference to any particular mail; and, as the plaintiff does not claim that there was any other or different kind of services rendered to defendant, he cannot recover in this case."

These requests were refused, and the court charged the jury:

"While one person cannot recover for services rendered for another without a request, express or implied, yet, if one voluntarily takes the benefit of another's labor, the law will presume that the laborer is to be paid for his work, unless the contrary is shown by the evidence. In this case, if it was understood between the plaintiff and the railroad company that he was to receive $5

monthly for his services, and that said amount was to be full payment of his services for carrying all the mail. he did carry, he cannot recover, and your verdict should be in favor of the defendant."

The requests were properly refused, and the charge, under the circumstances, presented the only question of fact in the case for the consideration of the jury. Counsel for defendant cite cases from which they deduce the following principle: No promise to pay for services is implied where circumstances fail to indicate that they were rendered or received for compensation, but clearly repel the idea that payment was to be made or asked for. Undoubtedly, this is the correct rule. But in the present case the defendant had the benefit of the plaintiff's services. It permitted the services to be performed, and there is no such relation between the parties as would repel the idea that payment was intended. The company had the plaintiff's services, and the law will presume that the work was to be paid for.

The judgment is affirmed.

McGRATH, C. J., and HOOKER, J., concurred with LONG, J.

GRANT, J. *(dissenting)*. There is no dispute about the facts in this case. The question, therefore, becomes one of law. Was there an implied contract between the plaintiff and the defendant by which he rendered services for which the defendant is legally bound to pay? When this service was performed, it is clear that the plaintiff did not understand that he was entitled to any compensation therefor other than what he received, but that he understood that the compensation he received from the defendant covered all the mail service at Niles, except that on the Michigan Central main line, for which the government paid him. The plaintiff understood that the

contracts made with the defendant and with the government included the carriage of all the mails that arrived at Niles over the defendant's road. The defendant also understood that the services for which plaintiff was paid included the carrying of all the mails for it. The government did not pay the defendant any specific sum for the carrying of the mail which came over the Michigan Central Air Line from its depot to the post-office. It appears to have been included in the general contract with the defendant for carrying the mails, by which it was required to take the mails from, and deliver them into, all terminal post-offices. It appears now to be conceded that, as to the Air Line Branch, Niles was one of its *termini;* but whether it was so understood during the years for which the plaintiff now seeks to recover does not appear. Plaintiff received every month $5 for carrying the mails for the defendant at Niles, and signed the receipts therefor. How can there be any privity of contract where neither party understands a contract to exist? During the seven years for which the plaintiff now seeks to recover, he did not understand that he was rendering services for which he was not paid. Neither did the defendant. Under such circumstances, the law does not, in my judgment, imply a contract.

The judgment should therefore be reversed, and a new trial ordered.

MONTGOMERY, J., did not sit.